IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| SHERIDAN L. DAVIS, individually, and on behalf of all others similarly situated, ) ) ) Plaintiff, ) ) v. ) ) SPRINT NEXTEL CORPORATION, et al., ) ) Defendants. ) ) | No. 12-01023-CV-W-DW |

## ORDER

Before the Court is Defendants' Motion to Compel Arbitration and Dismiss or Stay Case (Doc. 8). For the following reasons, Defendants' motion is granted.[1]

## I. BACKGROUND

Plaintiff Sheridan Davis filed her class action Petition for Damages in the Circuit Court of Jackson County, Missouri, alleging Sprint charged late fees to its cellular phone service users when such late fees should not have been imposed. Plaintiff has brought claims for breach of contract (Count I), breach of covenant of good faith and fair dealing (Count II), violation of Missouri Merchandising Practices Act (Count III), unjust enrichment and money had and received (Count IV), fraud (Count V) and fraudulent concealment (Count VI). Sprint removed to this Court under the Class Action Fairness Act and subsequently filed the present motion to compel arbitration.

---

[1] The Court will also refer to the defendants collectively as "Sprint."

Sprint maintains that this Court must compel arbitration of Plaintiff's claims pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.* and the parties' agreement. Sprint maintains that Plaintiff entered into a Subscriber Agreement with Sprint, the Terms & Conditions of which include an arbitration agreement. The arbitration agreement provides that the parties agree to finally settle all disputes only by arbitration. Plaintiff argues that arbitration of her claims is not required because the arbitration agreement is unconscionable and therefore unenforceable.

## II. DISCUSSION

The FAA reflects a strong federal policy in favor of arbitration and provides that agreements to arbitrate are "valid, irrevocable, and enforceable." See 9 U.S.C. § 2; see also AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1745 (2011). Accordingly, if a valid and enforceable arbitration agreement exists, any dispute that falls within the scope of that agreement must be submitted to arbitration. Lyster v. Ryan's Family Steak Houses, Inc., 239 F.3d 943, 945 (8th Cir. 2001).

However, the FAA also provides that an arbitration agreement may be declared unenforceable on any ground that exists at law or in equity for revocation of a contract. See § 2. Section 2 "permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." Concepcion, 131 S. Ct. at 1746 (quoting Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996)).

In the 2011 case AT&T Mobility LLC v. Concepcion, the Supreme Court reviewed an arbitration agreement found in cellular telephone contracts. The arbitration agreement had been found unconscionable by a federal district court in California and the U.S. Court of Appeals for the Ninth Circuit because the agreement did not permit classwide arbitration. Id. at 1745. The Supreme Court reversed, holding that the FAA preempted a California judicial rule that deemed unconscionable class arbitration waivers in consumer contracts and stating that the FAA preempts any state rule which "stands as an obstacle to the accomplishment and execution of [the FAA's] full purposes and objectives . . . ." See id. at 1753.[2]

The effect of Concepcion was described by the Missouri Supreme Court in Brewer v. Missouri Title Loans, 364 S.W.3d 486 (Mo. 2012). Where a party raises an unconscionability defense to an arbitration agreement, Concepcion requires the court to analyze the facts of the particular case to determine if the defense stands as an obstacle to the accomplishment of the FAA. See Brewer, 364 S.W.3d at 491-92. Put another way,

> Concepcion instructs that, instead of limiting its unconscionability considerations to the presence of the class waiver, the trial court should have assessed whether the arbitration agreement was enforceable in light of . . . ordinary state-law principles that govern contracts but that do not single out or disfavor arbitration.

Robinson v. Title Lenders Inc., 364 S.W.3d 505, 517 (Mo. 2012).

With these considerations in mind, the Court turns to the arbitration agreement at

---

[2] As declared by the Supreme Court in Concepcion, the overarching purpose of the FAA "is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." Id. at 1748.

issue in this case.  Upon review of the parties' arguments and the law, the Court finds that the arbitration agreement is not unconscionable.[3]

Plaintiff argues that the arbitration agreement is unconscionable because: it is contained in an adhesion contract, which is presented in a standardized form to all consumers and is non-negotiable; a large disparity in bargaining power exists between the parties to the contract; the contract spans dozens of pages and contains fine print; Sprint limited its damage exposure by stating that it would not be liable for incidental, consequential, punitive or special damages and also stated that its liability is limited to no more than the proportionate amount of the service charges attributable to the affected period; and the agreement bars any classwide action.  Plaintiff also claims the arbitration agreement is unenforceable because it requires the arbitration to be administered by the National Arbitration Forum, which has withdrawn from the consumer arbitration field.  Finally, Plaintiff argues that Sprint should be estopped from seeking arbitration because it has instituted legal actions against others without first resorting to arbitration.

As previously stated, one basis of Plaintiff's unconscionability argument is that the arbitration agreement bars any classwide action.  "Concepcion instructs clearly that a court cannot invalidate an arbitration agreement on the sole basis that it contains a class

---

[3] Courts have typically addressed the issue of unconscionability under Missouri law through the lens of procedural and substantive unconscionability.  See Brewer, 364 S.W.3d at 493 n.3.  However, the Missouri Supreme Court recently stated that, pursuant to the opinion in Concepcion, it would no longer focus on a discussion of procedural and substantive unconscionability and instead would limit its discussion to the facts related to unconscionability impacting the formation of the contract.  Id.  It advised Missouri courts to do the same in future decisions.  Id.  Accordingly, the Court will not analyze the issue through the lens of procedural and substantive unconscionability in this Order.

waiver." Robinson, 364 S.W.3d at 514-15. However, as described below, the Court does not find the arbitration agreement unconscionable on the various grounds that Plaintiff has raised. Accordingly, the existence of a class action wavier does not make this arbitration agreement unconscionable.

While the Court agrees that the contract was presented to Plaintiff in a standardized, non-negotiable form and that Sprint wields greater bargaining power than Plaintiff, these facts do not establish unconscionability under Missouri law. See Fallo v. High-Tech Inst., 559 F.3d 874, 878 (8th Cir. 2009) (non-negotiable contract presented by party with superior bargaining power was not unconscionable because the terms were clear and any reasonable person would expect that disputes would be arbitrated under the contract); Kenner v. Career Educ. Corp., No. 11-CV-997-AGF, 2011 WL 5966922, at *4 (E.D. Mo. Nov. 29, 2011); Robinson, 364 S.W.3d at 515, 517 n.14 ("As such, post-Concepcion, a court should not invalidate an arbitration agreement in a consumer contract simply because it is contained in a contract of adhesion or because the parties had unequal bargaining power, as these are hallmarks of modern consumer contracts generally.").

The arbitration agreement in this Subscriber Agreement is not hidden. The arbitration agreement is titled "Dispute Resolution" in large, bold font and is printed in the same text size as the other contract terms. Any reasonable person would expect disputes would be arbitrated under the contract, and Plaintiff has not alleged that Sprint used any high-pressure sales tactics to coerce her into signing the Subscriber Agreement. See Fallo, 559 F.3d at 878; Robinson, 364 S.W.3d at 517 n.4.

The Court finds this Subscriber Agreement to be less like the unconscionable agreement in Brewer v. Missouri Title Loans[4] and more like the agreement in Concepcion. In both this agreement and the Concepcion agreement, the cellular telephone companies provided informal resolution processes that allowed the parties to attempt to resolve the dispute prior to the initiation of arbitration proceedings. In both agreements, arbitration would occur in the county of the consumer's residence and either party could bring a claim in small claims court in lieu of arbitration. Further, both agreements provided that the cellular telephone company would cover some, if not all, of the consumer's arbitration costs.[5]

Conversely, the unconscionable agreement in Brewer contained no informal resolution process and required that each party bear all its own costs for the arbitration. Further, the title company reserved the right to forego arbitration and litigate in court while barring the borrower from doing so. The Missouri Supreme Court found that such an arbitration agreement provides no viable means of dispute resolution for the borrower.[6]

---

[4] The Missouri Supreme Court had previously issued an opinion in Brewer in 2010, in which it struck the arbitration agreement in the contract as unconscionable. However that decision was vacated and remanded by the U.S. Supreme Court for further consideration in light of Concepcion. After the Missouri Supreme Court again found the arbitration agreement unconscionable, Missouri Title Loans sought a petition for writ of certiorari to the U.S. Supreme Court in the second Brewer decision. That petition was denied on October 1, 2012.

[5] In the Concepcion agreement, AT&T agreed to pay all costs of arbitration for non-frivolous claims. In the agreement at issue here, Sprint agrees to cover "any arbitration administrative or filing fees above: (a) $25 if [the consumer is] seeking less than $1,000 from [Sprint]; or (b) the equivalent court filing fees for a court action in the appropriate jurisdiction if [the consumer is] seeking $1,000 or more from [Sprint]."

[6] Indeed, no borrower had ever utilized the arbitration clause to recover from the title company. See Brewer, 364 S.W.3d at 495.

The Court finds that the same cannot be said for the arbitration agreement at issue here.

Plaintiff also points to language in the Subscriber Agreement that limits Sprint's damages as a basis for the unconscionability of the arbitration agreement. "[I]ssues of remedy go to the merits of the dispute and are for the arbitrator to resolve in the first instance." Arkcom Digital Corp. v. Xerox Corp., 289 F.3d 536, 539 (8th Cir. 2002) (noting that whether the arbitration agreement validly limits remedies does not affect the validity of the agreement to arbitrate); see also Chisholm v. Career Educ. Corp., No. 11-CV-994-HEA, 2011 WL 5524552, at *2 (E.D. Mo. Nov. 14, 2011); KCMS Contracting, Inc. v. Triage Mgmt. Servs., Inc., No. 10-CV-182-ODS, 2010 WL 2008844, at *2 (W.D. Mo. May 18, 2010); Grossman v. Thoroughbred Ford, Inc., 297 S.W.3d 918, 924 (Mo. Ct. App. 2009). Because issues concerning damages are for the arbitrator to decide and do not affect the validity of the arbitration agreement, Sprint's limits on damages do not render this arbitration agreement unconscionable.

Plaintiff also argues that the arbitration agreement is unenforceable because the Subscriber Agreement requires that the arbitration will be administered by the National Arbitration Forum ("NAF"). Plaintiff maintains that as of July 24, 2009, NAF ceased all consumer arbitrations. The text of the arbitration agreement regarding the selection of an arbitrator is as follows:

> (4) The arbitration will be administered by the National Arbitration Forum ("NAF") under its arbitration rules. If any NAF rule conflicts with the terms of the Agreement, the terms of the Agreement apply. . . .
> (5) Unless we each agree otherwise, the Arbitration will be conducted by a single neutral arbitrator and will take place in the county of your

> last billing address. The federal or state law that applies to the
> Agreement will also apply during the arbitration.

In analyzing similar language in an arbitration agreement, the U.S. District Court for the District of Minnesota held that the agreement did not mandate that NAF be selected as the exclusive arbitrator, it only required that NAF administer the arbitration agreement. See Meskill v. GGNSC Stillwater Greeley LLC, 862 F. Supp. 2d 966, 972-74 (D. Minn. 2012). As such, it found the arbitration agreement enforceable because it suggested that an entity other than NAF could conduct the arbitration. Id. The district court cited to several cases that support the proposition that "when an arbitration clause selects an arbitral's forum's rules but does not expressly designate that forum to hear the matter, arbitration may be compelled notwithstanding the forum's unavailability." Id. at 972. Here, the agreement states that the arbitration will be administered by NAF under its rules, but as to what entity will actually conduct the arbitration, it only requires that "a single neutral arbitrator" conduct the proceedings. The Court agrees with the reasoning set forth in Meskill, and finds that the arbitration agreement permits arbitration to be conducted by an entity other than NAF, therefore the agreement in enforceable.

Finally, Plaintiff argues that the Court should not compel arbitration on estoppel grounds. Plaintiff states that: "Although no discovery has commenced in this case and Plaintiff has not had the opportunity to complete its investigation, upon information and belief, it appears that Sprint has pursued delinquent subscribers in Missouri state court, rather than proceeding to arbitration." As support, Plaintiff claims that a search on Missouri case.net reveals cases where Sprint sued subscribers by assigning its collection

rights to third parties to bring a court action on Sprint's behalf.  Although Sprint is not named as a party to these actions, Plaintiff claims that Sprint has assigned its rights so as to effectively circumvent the terms of Sprint's arbitration agreements.  Sprint has submitted an affidavit in which the Outside Collection Agency Manager at Sprint avers that Sprint does not pursue its individual liable customers in civil actions for collections on past due accounts.

Courts have typically placed a heavy burden on those seeking to prove waiver of arbitration.  See Chisholm, 2011 WL 5524552, at *2; Newsom v. Anheuser-Busch Cos., Inc., 286 F. Supp. 2d 1063, 1067 (E.D. Mo. 2003).  Further, any doubts concerning the question of arbitrability should be resolved in favor of arbitration.  See Kenner, 2011 WL 5966922, at *4.  In a typical waiver claim, the party seeking to avoid arbitration attempts to prove that the other party acted inconsistently with its right to arbitrate in the present proceeding, such as by initiating the litigation or participating in the litigation through extensive motion practice or discovery.  Although Plaintiff does not argue a waiver claim in that she suggests Sprint acted inconsistently with the arbitration agreement in a case *other than* the present one, her argument rests on a premise similar to waiver, thus the Court finds that she faces the same heavy burden as would apply in a wavier claim.

Plaintiff has not met this heavy burden in proving Sprint acted inconsistently with the arbitration agreement.  She has not provided evidence that Sprint was a party to litigation where an arbitration agreement similar to the present one was in effect.  Further, she has not stated whether the alleged lawsuits were filed in small claims court, which

would be permissible under the arbitration agreement here. Accordingly, the Court finds that Sprint's motion to compel arbitration should not be denied on estoppel grounds.

### III. CONCLUSION

For the reasons described in this Order, the Court finds that a valid and enforceable arbitration agreement exists and that this dispute must be submitted to arbitration. Under the FAA, the proper course of action is to stay these proceedings pending completion of arbitration. See 9 U.S.C. § 3; see also Green v. SuperShuttle Int'l, Inc., 653 F.3d 766, 769-70 (8th Cir. 2011). Accordingly, Defendants' Motion to Compel Arbitration and Dismiss or Stay Case (Doc. 8) is GRANTED and this action is STAYED pending arbitration. The parties shall update the Court on the status of the arbitration in ninety (90) days.

SO ORDERED.

Date:  November 26, 2012                     /s/ Dean Whipple
                                                                                   Dean Whipple
                                                           United States District Judge